IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br><br><br><br><br>vs.<br><br><br>HICKORY WESLEY MCCOY,<br><br>Defendant. | MEMORANDUM DECISION AND ORDER DENYING IN PART AND RESERVING IN PART DEFENDANT'S SUPPLEMENTAL MOTION TO SUPPRESS<br><br><br><br><br><br>Case No. 2:12-CR-218 TS |

This matter is before the Court on Defendant Hickory Wesley McCoy's Supplemental Motion to Suppress.  For the reasons discussed more fully below, the Court will deny in part Defendant's Motion and reserve in part the determination of Defendant's Motion pending review of the evidence submitted at trial.

## I.  PROCEDURAL HISTORY

Defendant filed a motion to suppress in this matter on July 17, 2012.[1]  Pursuant to that motion, Defendant raised the following issues: (1) was the stop of the vehicle Defendant was operating initially justified; (2) "[w]as the stop based upon information received from another

---

[1]*See* Docket No. 19.

1

source"; (3) "[c]ould the officer have smelled any unusual odor"; (4) "[w]as the detention

unreasonably delayed to conduct a dog search without a warrant"; (5) "[c]ould a warrant have

been obtained electronically"; and (6) "[d]id the detention exceed the scope of the justification, if

any[,] for the stop."[2]  The Court held evidentiary hearings on Defendant's original motion to

suppress on August 30, 2012, and October 16, 2012.

        In subsequent briefing on Defendant's original motion, Defendant abandoned all but the

issue of whether the investigating officer initiated the stop pursuant to an objectively reasonable

suspicion that a traffic violation had occurred.[3]  In a Memorandum Decision entered December

18, 2012, the Court found that the officer had an objectively reasonable suspicion that a traffic

violation had occurred and denied Defendant's motion on that ground.

        On May 30, 2013, Defendant filed a motion seeking leave of Court to file an additional

motion to suppress, arguing (1) that the "scope and duration of [Defendant's] detention by police

required suppression of the evidence produced by such detention" and (2) "there are

constitutional issues regarding the use of a so-called drug detecting dog as well."[4]  The

Government recognized that these issues were not the focus of Defendant's prior motion, but

nevertheless contended that these issues were adequately addressed.[5]  Balancing Defendant's

interest in a speedy resolution of the charges alleged and Defendant's right to explore all

exculpatory arguments, the Court granted Defendant leave to file a supplemental suppression

---

    [2]*Id*. at 3.

    [3]*See* Docket Nos. 43–46.

    [4]Docket No. 105, at 2.

    [5]*See* Docket No. 107.

motion and set an expedited briefing schedule.  The parties have since submitted briefing on

Defendant's Supplemental Motion to Suppress.

## II.  FACTUAL BACKGROUND

The following factual background is taken from the evidentiary hearings held in this case.

On January 24, 2012, Trooper Randy Riches was positioned at milepost 112 on Interstate 80, on

the right hand side of the road, facing east bound.  At around 11:57 p.m., Defendant, operating a

2011 Chevrolet Malibu rental car, passed Trooper Riches headed east bound on Interstate 80.

Trooper Riches initiated a traffic stop of Defendant's vehicle and Defendant pulled his vehicle

over to the left side of the roadway.  Trooper Riches approached the vehicle and informed the

occupants that he pulled the vehicle over for a left-lane violation.

Trooper Riches requested Defendant's driver's license.  Defendant was unable to provide

a driver's license but instead provided a state identification card from the state of California.

Defendant also provided a copy of the rental agreement for the vehicle he was operating.

Defendant indicated that he did not rent the vehicle; rather, it was rented by the sister of the co-

defendant in this matter, Staci McCaslin.  Ms. McCaslin was the only passenger in the vehicle.

Trooper Riches noted at that time that neither Mr. McCoy nor Ms. McCaslin were authorized

under the rental agreement to operate the vehicle.

Trooper Riches inquired as to Defendant's travel plans and Defendant indicated that Ms.

McCaslin was his girlfriend and that they were on their way to Denver, Colorado, to go skiiing.

Trooper Riches did not see any ski equipment or other clothing indicative of a ski vacation in the

vehicle.  During this initial conversation, Trooper Riches bent close to the open driver's side

window because the noise on the interstate made it difficult to hear Defendant's responses and because he detected a faint odor of raw marijuana.

At that point, Trooper Riches requested that Defendant accompany him back to his patrol vehicle where Trooper Riches could perform a records check and begin creating a citation for the violation. According to Trooper Riches, Defendant was visibly shaking and experiencing elevated breathing, indicative of a level of nervousness greater than that of an innocent motorist. Trooper Riches testified that at that point in time he was "suspicious of a crime taking place" and brought Defendant back to his vehicle as a matter of "officer safety."[6]

Once in the patrol vehicle Trooper Riches continued to question Defendant about his travel plans. Defendant indicated that he did not know where they would be staying in Denver or how long they would be staying. When asked about his employment, Defendant indicated that he had been injured on the job and was collecting workers' compensation. Defendant also disclosed that his driver's license was suspended. During this conversation, Trooper Riches sent a silent message to dispatch asking for a K-9 unit to respond to his location.

Trooper Riches then returned to the vehicle to see if Ms. McCaslin had a valid driver's license and to inquire as to the status of the rented vehicle. Ms. McCaslin indicated that Defendant was her boyfriend and that he surprised her with this trip. She also indicated that Defendant worked construction and that she was not aware of his having been injured or collecting disability.

Trooper Riches returned to the patrol car and informed Defendant that Trooper Riches was going to have a K-9 take a lap around the vehicle. Trooper Riches asked Defendant and Ms.

---

[6]Suppression Hr'g Tr. 23:10–12 Nov. 14, 2012.

McCaslin to stand at a short distance from the patrol vehicle while a K-9 officer made a pass around the vehicle.  According to Trooper Riches, the K-9 alerted on the vehicle and, at that juncture, a search of the vehicle was performed.  As a result of that search, officers discovered a pound of marijuana in a duffle bag in the back seat, several packages of marijuana in boxes located in the trunk, and a Tech-9 handgun with 30 rounds of ammunition under the driver's seat of the vehicle.

## III.  DISCUSSION

### A.    SCOPE AND DURATION OF DETENTION

Defendant argues that his Fourth Amendment rights were violated because Trooper Riches detained him to an extent beyond that necessary to effectuate the purpose of the traffic stop without reasonable suspicion of some other criminal activity.

"The Fourth Amendment protects citizens from unreasonable searches and seizures conducted by either state or federal government officials."[7]  "Although traffic stops are often brief, they are nonetheless 'seizures' within the meaning of the Fourth Amendment."[8]  "Since a traffic stop itself is a seizure, the Fourth Amendment requires the stop to be justified at its inception and reasonably limited in scope.  A justifiable stop must not exceed the reasonable duration required to complete the purpose of the stop."[9]  "An investigative detention may be expanded beyond its original purpose, however, if during the initial stop the detaining officer

---

[7]*United States v. White*, 584 F.3d 935, 944 (10th Cir. 2009).

[8]*Id*. at 945 (citing *Delaware v. Prouse*, 440 U.S. 648, 653 (1979)).

[9]*United States v. Rice*, 483 F.3d 1079, 1082 (10th Cir. 2007) (citing *United States v. Holt*, 264 F.3d 1215, 1220 (10th Cir. 2001); *United States v. Stewart*, 473 F.3d 1265, 1269 (10th Cir. 2007)).

acquires reasonable suspicion of criminal activity, that is to say the officer must acquire a particularized and objective basis for suspecting the particular person stopped of criminal activity.'"[10]

"A determination of reasonable suspicion is based on 'an objective standard taking the totality of the circumstances and information available to the officers into account.'"[11]  The Court is mindful of a "trained law enforcement officer's ability to distinguish between innocent and suspicious circumstances, remembering that reasonable suspicion represents a 'minimum level of objective justification' which is 'considerably less than proof of wrongdoing by a preponderance of the evidence.'"[12]  That being said, reasonable suspicion must be based upon "specific and articulable facts and rational inferences" drawn therefrom.[13]

In the instant case, Trooper Riches testified that the conversation he had with Defendant was typical and that the stop was not extended in length.  It is clear that questions regarding the ownership of a vehicle and the travel plans of the occupants of a vehicle are within the permissible scope of a traffic stop.[14]  Nevertheless, Defendant asserts that Trooper Riches

---

[10]*United States v. Villa-Chaparro*, 115 F.3d 797, 801–02 (10th Cir. 1997) (internal quotation marks and citations omitted).

[11]*Rice*, 483 F.3d at 1082 (quoting *United States v. Johnson*, 364 F.3d 1185, 1189 (10th Cir. 2004)).

[12]*United States v. Mendez*, 118 F.3d 1426, 1431 (10th Cir. 1997) (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989)).

[13]*United States v. Werking*, 915 F.2d 1404, 1407 (10th Cir. 1990).

[14]*See Holt*, 264 F.3d at 1221 (suggesting in dicta that questions about travel plans are germane and permissible where the motorist was weaving on the highway); *United States v. West*, 219 F.3d 1171, 1176 (10th Cir. 2000) (holding that "questions about travel plans are routine and may be asked as a matter of course without exceeding the proper scope of a traffic

prolonged the length of the detention for no other reason than to await the arrival of a K-9 unit.
In support of this assertion, Defendant notes that it took Trooper Riches over seventeen minutes
to write a warning citation.  Trooper Riches testified however that it usually takes "[a]nywhere
from 12 to 16, 17 minutes" to fill out a citation.[15]  The Court finds Trooper Riches's testimony to
be credible and therefore finds that the detention was not delayed to allow for the arrival of the
K-9 unit.

Furthermore, even accepting as true Defendant's assertion that Trooper Riches delayed
the stop to allow for the arrival of the K-9 unit, the Court finds that Defendant's Fourth
Amendment rights were not violated because the totality of the circumstances demonstrate that
an objectively reasonable officer would have had a reasonable suspicion of criminal activity.

At the outset of the stop, Trooper Riches approached Defendant at the open driver's side
window of the rental vehicle and smelled a faint odor of raw marijuana emanating from the
vehicle.  Numerous decisions have held that the odor of narcotics or masking agents used in
narcotics transportation can support a finding of reasonable suspicion.[16]  Indeed, because

---

stop"); *United States v. Rivera*, 867 F.2d 1261, 1263 (10th Cir. 1989) (holding that an officer
may request license and ask about ownership of the car).

[15]Suppression Hr'g Tr. 68:14–16.

[16]*United States v. Leos-Quijada*, 107 F.3d 786, 795 (10th Cir.1997) (noting that among
the factors contributing to suspicion of vehicle was the "presence of a strong air freshener scent
and the bottle of air freshener"); *United States v. Alvarez*, 68 F.3d 1242, 1245–46 (10th Cir.
1995) (holding that strong smell of an air freshener coupled with the fact that a large truck was
rented merely to transport clothes provides sufficient indicia of criminal activity).

marijuana has a distinct smell, the Tenth Circuit has held that "the odor of marijuana alone can satisfy the probable cause requirement to search a vehicle or baggage."[17]

Next, Trooper Riches testified that Defendant exhibited signs of excessive nervousness, including shaking and elevated breathing.  "Nervousness is 'of limited significance' in determining whether reasonable suspicion exists."[18]  However, "[e]xtreme and continued nervousness . . . is entitled to somewhat more weight."[19]  Defendant does not dispute that he was shaking and that his breathing was elevated but contends that such were normal bodily reactions brought on by the cold night air.  As indicated, the Court is mindful of a trained law enforcement officer's ability to distinguish between innocent and suspicious circumstances.  For this reason, the Court finds Trooper Riches testimony that Defendant's level of nervousness was "elevated more greatly than the innocent motorist" to be credible and relevant to the reasonable suspicion analysis.[20]

Trooper Riches also learned early in the stop that neither Defendant nor Ms. McCaslin rented the vehicle in question and that neither were authorized under the rental agreement to

---

[17]*United States v. Morin*, 949 F.2d 297, 300 (10th Cir. 1991); *see also West*, 219 F.3d at 1178 (an officer's detection of the smell of drugs in a car is entitled to substantial weight in the probable cause analysis and can be an independently sufficient basis for probable cause); *United States v. Ozbirn*, 189 F.3d 1194, 1200 (10th Cir. 1999) (officer's detection of odor of marijuana, along with other suspicious conduct including vague travel plans constitutes probable cause); *United States v. Downs*, 151 F.3d 1301, 1303 (10th Cir. 1998) (overpowering smell of raw marijuana emanating from a vehicle provided probable cause to search the vehicle's trunk).

[18]*United States v. Williams*, 271 F.3d 1262, 1268 (10th Cir. 2001) (quoting *United States v. Wald*, 216 F.3d 1222, 1227 (10th Cir. 2000)).

[19]*Id*. (internal quotation marks and citation omitted).

[20]Suppression Hr'g Tr. 81:10–12.

operate the vehicle.  Indeed, Defendant did not possess a valid driver's license.  The Tenth

Circuit has held that "one recurring factor supporting a finding of reasonable suspicion is the

inability of a defendant to provide proof that he is entitled to operate the vehicle he is driving."[21]

Thus, this fact weighs heavily in favor of finding reasonable suspicion of other criminal activity.

Finally, Defendant and Ms. McCaslin provided somewhat implausible and inconsistent

travel plans.  "[C]ontradictory or implausible travel plans can contribute to a reasonable

suspicion of illegal activity."[22]  Both Ms. McCaslin and the Defendant stated that they were

traveling to Denver, Colorado to ski; however, neither knew where or for how long they would

be in Colorado.  Trooper Riches saw no sign of ski equipment or clothing in the vehicle.  This

lack of ski equipment and clothing provides very little weight as the vehicle had a trunk that may

have contained such items.[23]  However, Defendant also stated that he was not working but was

collecting worker's compensation for an injury he received on the job.  Ms. McCaslin indicated

that Defendant worked construction and she did not know of any such injury.  These

discrepancies, and the fact that an individual injured in construction is unlikely to thereafter take

a ski vacation, make Defendant's travel plans somewhat implausible and inconsistent.  Although

these discrepancies are not manifestly suspicious, taken together with the remaining factors they

can properly contribute to reasonable suspicion in an experienced officer.

Considering these several factors under the totality of the circumstances, the Court

concludes that Trooper Riches had an objectively reasonable and articulable suspicion that

---

[21]*Villa-Chapparo*, 115 F.3d at 802 (internal quotation marks and citations omitted).

[22]*Mendez*, 118 F.3d at 1431.

[23]*See id.*

9

Defendant was involved in criminal conduct.  Trooper Riches was therefore justified in detaining

Defendant until the arrival of the K-9 unit.

In sum, the Court finds that Defendant's Fourth Amendment rights were not violated

because the stop was reasonably limited in scope and duration and, in any event, under the

totality of the circumstances an objectively reasonable officer would have had reasonable

suspicion of criminal activity on the facts presented.

B.      K-9 SEARCH AND PROBABLE CAUSE

Defendant argues that there is a paucity of evidence to determine whether the K-9 unit

used in this case was experienced, reliable, properly trained, and employed in the proper manner.

For this reason, Defendant asserts that the K-9 sniff cannot be used to establish probable cause to

search the vehicle.  The Government contends that it subpoenaed and was prepared to examine

the K-9 officer during the original suppression hearings but did not do so because Defendant

decided, at that time, that an examination of the K-9 officer was unnecessary.  In any event, the

Government proffers that the K-9 officer will testify at trial and reliability can be established at

that time.

It is unlikely that Defendant has standing to object to the search of the vehicle.[24]

However, Defendant may have standing to object to the search of the luggage, boxes, and gun

---

[24]*See United States v. Jones*, 44 F.3d 860, 871 (10th Cir. 1995) ("[A] defendant in sole
possession and control of a car rented by a third party has no standing to challenge a search or
seizure of the car."); *United States v. Obregon*, 748 F.2d 1371, 1374–75 (10th Cir. 1984)
(holding that defendant driver had no reasonable expectation of privacy in a rental car where the
rental agreement demonstrated that the car had been rented by a third party and there was no
evidence that the rental company had permitted defendant lawfully to drive the car).

case in which the controlled substances and firearm were found.[25]  Thus, a determination of whether Trooper Riches had probable cause to search said items may be relevant to a determination of Defendant's Motion.

Based on the Government's representation that the K-9 officer will testify at trial, the Court will reserve ruling on this issue until the Government has an opportunity to establish the reliability of the K-9 unit alert.  In so doing, the Court is not expressing any opinion as to whether the alert by the K-9 unit would be necessary for a determination that probable cause existed to search the vehicle and other items at issue.

IV.  CONCLUSION

It is therefore

ORDERED that Defendant's Supplemental Motion to Suppress (Docket No. 115) is DENIED IN PART AND RESERVED IN PART.  It is further

ORDERED that the time from the filing of the Motion to Suppress—June 12, 2012—through the date of this Order is excluded from the computation of Speedy Trial Act time pursuant to 18 U.S.C. § 3161(h)(1)(D) and (H).

DATED   June 20, 2013.

BY THE COURT:

_____

TED STEWART
United States District Judge

---

[25]*See United States v. Edwards*, 632 F.3d 633, 641–42 (10th Cir. 2001) (holding that defendant had standing to challenge search of his personal luggage contained within trunk of rental vehicle, even though he did not have standing to challenge search of rental car and its trunk because he was not renter of vehicle and not an authorized driver under rental agreement).