IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>vs.<br><br>HICKORY WESLEY MCCOY,<br><br>  Defendant. | MEMORANDUM DECISION AND ORDER DENYING THE RESERVED ARGUMENT OF DEFENDANT'S SUPPLEMENTAL MOTION TO SUPPRESS<br><br><br>Case No. 2:12-CR-218 TS |

This matter is before the Court on the reserved argument of Defendant's Supplemental Motion to Suppress. For the reasons discussed more fully below, the Court will deny the remaining relief sought in Defendant's Motion.

I.  BACKGROUND

The factual background of this case has been discussed at length in the Court's prior orders on Defendant's motions to suppress and those factual statements are incorporated as if stated here.[1]

---

[1] *See* Docket Nos. 46, 140.

On May 30, 2013, Defendant filed a motion seeking leave of Court to file an additional motion to suppress, arguing (1) that the "scope and duration of [Defendant's] detention by police required suppression of the evidence produced by such detention" and (2) "there are constitutional issues regarding the use of a so-called drug detecting dog as well."[2]  In a Memorandum Decision entered June 21, 2013, the Court denied in part and reserved in part Defendant's Supplemental Motion to Suppress.[3]  In that Memorandum Decision, the Court ruled on Defendant's first ground for relief finding that "Defendant's Fourth Amendment rights were not violated because the stop was reasonably limited in scope and duration and, in any event, under the totality of the circumstances an objectively reasonable officer would have had reasonable suspicion of criminal activity on the facts presented."[4]

The Court declined to reach Defendant's arguments regarding the K-9 unit.  In declining to reach that argument, the Court noted that it was without sufficient evidence to determine whether Defendant had standing to object to the search of the vehicle or the luggage, cardboard box, and gun case in which the contraband and firearm were found.  Further, the government represented that evidence would be submitted at trial to establish the reliability of the K-9 unit.

The Court has now heard testimony and received evidence on the foregoing issues and is prepared to rule on Defendant's outstanding suppression arguments.

---

[2] Docket No. 105, at 2.

[3] Docket No. 140.

[4] *Id*. at 10.

II.  DISCUSSION

A.   STANDING

A threshold question to the Fourth Amendment analysis is whether an individual has standing to assert Fourth Amendment rights in the object searched.[5]  "The proponent of a motion to suppress has 'the burden of adducing facts'" to demonstrate standing.[6]  The Court considers "two factors in determining whether a defendant has standing to assert a violation of his Fourth Amendment rights: 'whether the defendant manifested a subjective expectation of privacy in the area searched and whether society is prepared to recognize that expectation as objectively reasonable.'"[7]

The following additional criteria are relevant in the context of automobile searches: "(1) whether the defendant asserted ownership over the items seized from the vehicle; (2) whether the defendant testified to his expectation of privacy at the suppression hearing; and (3) whether the defendant presented any testimony at the suppression hearing that he had a legitimate possessory interest in the vehicle."[8]

Turning first to the rental vehicle, the Court finds that Defendant has failed to meet his burden to demonstrate standing to object to the search of the vehicle.  Defendant has not testified that he had an expectation of privacy in the vehicle, nor has Defendant provided any evidence

---

[5]*United States v. Allen*, 235 F.3d 482, 488–89 (10th Cir. 2000).

[6]*Id*. at 489 (quoting *United States v. Gama-Bastidas*, 142 F.3d 1233, 1238 (10th Cir. 1998)).

[7]*United States v. Parada*, 577 F.3d 1275, 1280 (10th Cir. 2009) (quoting *Allen*, 235 F.3d at 489).

[8]*Allen*, 235 F.3d at 489.

that he had a legitimate possessory interest in the vehicle.[9] Defendant was not an authorized driver on the rental agreement. Indeed, Defendant claimed that the vehicle was rented by his girlfriend's sister, but could not provide that sister's name and, according to the case agent involved in the investigation of this case, the rental vehicle was later reported stolen.

Turning then to the items searched within the vehicle. The controlled substances and firearm and ammunition were found in a cardboard box located in the trunk of the vehicle, the gun case located under the driver's seat of the vehicle, and the backpack located on the backseat of the vehicle.

When Trooper Riches removed the cardboard box from the trunk in the vehicle, Defendant informed Trooper Riches that the box was owned by a friend of Defendant and Defendant was mailing the box for that friend. When Trooper Riches continued to remove the box, Defendant further stated that the box was his, and that Trooper Riches did not have permission to open his mail. By these statements, Defendant manifested an expectation of privacy in the cardboard box.

The backpack on the backseat of the car and the gun case under the driver's seat were both located in easy reach of the Defendant. The backpack contained an identification tag with Defendant's name and other documents with Defendant's identifying information. The backpack also contained additional ammunition for the firearm located in the gun case. At the outset of the

---

[9] *See United States v. Jones*, 44 F.3d 860, 871 (10th Cir. 1995) ("[A] defendant in sole possession and control of a car rented by a third party has no standing to challenge a search or seizure of the car."); *United States v. Obregon*, 748 F.2d 1371, 1374–75 (10th Cir. 1984) (holding that defendant driver had no reasonable expectation of privacy in a rental car where the rental agreement demonstrated that the car had been rented by a third party and there was no evidence that the rental company had permitted defendant lawfully to drive the car).

search, Defendant informed Trooper Riches that Trooper Riches did not have Defendant's permission to search the vehicle. Based on this statement, the identifying marks, and location of the items searched, the Court finds that Defendant expressed a subjective expectation of privacy in these items.

Numerous courts have recognized that a subjective expectation of privacy in luggage and other personal items is "one that society has recognized as reasonable."[10] Therefore, the Court concludes that Defendant has standing to challenge the search of the cardboard box, the backpack, and the gun case.

B.   K-9 UNIT AND PROBABLE CAUSE

Defendant argues that there is a paucity of evidence to determine whether the K-9 unit used in this case was experienced, reliable, properly trained, and employed in the proper manner. For this reason, Defendant asserts that the K-9 sniff cannot be used to establish probable cause to search the vehicle or items found within the vehicle.

At trial, the government called as a witness West Valley Police Officer Darrin Hoover. Officer Hoover is the handler for Taz. Officer Hoover and Taz make up the K-9 unit that performed the periphery sniff of the rental vehicle in this case. Officer Hoover testified that he has worked with Taz since Taz was two and a half years old and that Taz is now seven years old.

---

[10] *United States v. Edwards*, 632 F.3d 633, 642 (10th Cir. 2001); *see also Arkansas v. Sanders*, 442 U.S. 753, 761 n.8 (1979) (noting that "there is no question of [the defendant's] standing to challenge the search" where he asserted ownership over the luggage in question), *abrogated on other grounds by California v. Acevedo*, 500 U.S. 565, 579 (1991); *United States v. Buchner*, 7 F.3d 1149, 1154 (5th Cir. 1993) ("The owner of a suitcase located in another's car may have a legitimate expectation of privacy with respect to the contents of his suitcase.").

Officer Hoover testified that he and Taz are certified to detect drugs. According to Officer Hoover, Taz is trained and certified to detect a number of narcotics, including marijuana. The government provided as exhibits Officer Hoover and Taz's certifications for the time-period in question. Officer Hoover also testified regarding Taz's success rate in passing these certifications, indicating that a 70% is required to pass and Taz consistently scores in the 90% range.

The government reviewed the video of the sniff with Officer Hoover. Officer Hoover noted the moments and locations where Taz alerted to the presence of drugs and where Taz indicated the strong presence of drugs. These included indicating at the front driver's side door, alerting at the trunk, and once more indicating on the passenger side of the vehicle. Officer Hoover testified that the search transpired in the usual manner and that Taz made strong indications as to the presence of narcotics.

The Court finds Officer Hoover's testimony to be credible and, therefore, finds that Taz and Officer Hoover were properly trained and possessed the proper experience to perform the sniff search. For these reasons, the Court finds that the K-9 sniff search was reliable and that the officers had probable cause to search the entire vehicle and the items in question.[11]

---

[11] *See United States v. Ross*, 456 U.S. 798, 825 (1982) (holding that "[i]f probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search"); *Parada*, 577 F.3d at 1281–83 (holding that "officers had probable cause to search the entire vehicle based on the dog's alert to the front driver's side door").

## III.  CONCLUSION

It is therefore

ORDERED that the reserved argument of Defendant's Supplemental Motion to Suppress (Docket No. 115) is DENIED.

DATED   June 27, 2013.

BY THE COURT:

_____
TED STEWART
United States District Judge